**Stewart JUSTICE, Sr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3:85–0417.**

United States District Court, S.D. West Virginia, Huntington Division.

Aug. 30, 1985.

James W. St. Clair, Marshall & St. Clair, Huntington, W.Va., for plaintiff.

Gary E. Pullen, Asst. U.S. Atty., Huntington, W.Va., Gerard J. Mene, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

The Plaintiff, Stewart Justice, Sr., has brought this action seeking refunds of taxes paid for the years 1976, 1977, and 1979. Pending before the Court is the Government's motion to dismiss a portion of the suit.[1] Specifically, the Government's motion addresses the refunds sought for 1976 and 1977.

### I. *Background*

Stewart Justice, Sr., is a resident of Delbarton, West Virginia. He is a businessman. According to the Internal Revenue Service, Justice's normal business activities include general construction work, truck hauling, leasing of trucks for hauling, coal mining partnership activities and, in prior years, buying and selling used cars. In his complaint, the Plaintiff alleges that he is also engaged in the suretyship business. The IRS disputes this allegation.

The dispute over whether the Plaintiff was in the suretyship business is relevant because in 1977 the Plaintiff signed a "Letter of Credit" at the Matewan National Bank in favor of Katron Corporation, a Tennessee based coal company. The IRS asserts that this act was not in the normal course of business, and that the Plaintiff was in fact motivated by his close personal relationship to Lyle Neal, President of Katron Corporation. The Plaintiff, on the other hand, argues that he was motivated by the profit to be made off the transaction. In any event, Katron Corporation experienced severe financial difficulties and filed

---

1. Although the Government styled its motion as one to dismiss, it has appended several exhibits to the motion. Both parties refer to the exhibits; neither doubts their veracity. Accordingly, the Court will treat this motion as one for partial summary judgment under *Rule* 56. *See* Wright & Miller, *Federal Practice and Procedure,* § 1366 (1969).

for bankruptcy in 1978 or 1979. As a consequence, the Plaintiff was forced to pay a sum of $150,000 to the Matewan bank to fulfill his obligations as surety. He thereafter claimed the $150,000 as a deduction for a business bad debt when he filed his tax return on June 30, 1980, for the taxable year ending December 31, 1979. This deduction for an alleged business bad debt created a net operating loss (NOL) for 1979. Thereupon, the Plaintiff carried back the NOL to tax years 1976 and 1977. This carryback deduction thus created alleged overpayments of tax of $1,639.00 for 1976 and $61,200.24 for 1977. The Plaintiff filed claims for these amounts on July 9, 1980.

As previously mentioned, the IRS's position was that the suretyship debt was not a bad debt incurred in the ordinary course of business. Accordingly, on August 9, 1982, the IRS disallowed the refund claims. The denial was based on the determination that the debt was a nonbusiness bad debt within the meaning of 26 U.S.C. § 166.[2] Adding insult to injury, the IRS also determined that the Plaintiff had underreported his 1979 gross income by $39,900.00.

His refund claims thus being denied, the Plaintiff filed another set of refund claims for 1976 and 1977 on March 9, 1983. The basis for this second set of refund claims was essentially the carryback NOL for 1979. In addition, the Plaintiff claimed a reduction in his 1977 gross income in the amount of $54,168.34. The basis for this reduction was that the amount represented the receipts of a loan repayment and, as such, should not have been included in gross income. As a result of the adjustments made to his 1979 income figures and his subsequent liability, the Plaintiff filed a refund claim in the amount of $30,890.97 for the year 1979.

The IRS disallowed this second set of refund claims on the same basis as the first: that the business bad debt deduction

for 1979 was disallowed, thus there was no NOL for 1979 and, therefore, no deduction to carry back to 1976 and 1977. The refund claimed for the reduction in 1977 income because of the loan repayment was disallowed because the claim was not filed within the statute of limitations specified in 26 U.S.C. § 6511. Finally, the refund claim for 1979 was denied on the basis that a deficiency assessment had previously been made against the Plaintiff for that year.

Mr. Justice then filed this suit on April 4, 1985. The Government now contends by motion for dismissal that, with the exception of the taxable year ending December 31, 1979, his suit is barred by the applicable statute of limitations.

## II. *Discussion*

### A. *Applicable Statute of Limitations.*

The Government contends without objection from the Plaintiff, Justice, that the applicable statute of limitations for judicial review of an administrative denial of a tax refund is two years. This period is found in 26 U.S.C. § 6532(a)(1), which provides, in pertinent part, as follows:

"No suit or proceeding under Section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun ... after the expiration of two years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

It must again be noted that the Plaintiff's first set of refund claims was denied on August 6, 1982; the second set was denied on October 4, 1983. This action was brought on April 4, 1985. Hence, more than two years have passed since the first set of refund claims was denied; however, less than two years have passed since the second set was denied. It is the second set upon which the Plaintiff bases this action.

---

**2.** Counsel for the Government notes in his brief the substantial effect which this determination had upon Justice's tax return. A business bad debt is deductible dollar-for-dollar from gross income. 26 U.S.C. § 166(a). Conversely, a nonbusiness bad debt is treated as a short term capital loss and can only be used to reduce capital gains. 26 U.S.C. § 166(d).

## B. Similarity of Refund Claims.

■ The Government contends that the refund claims for the years 1976 and 1977 in the second set are identical to the claims for the same years in the first set. It cites ample authority for the proposition that a refiling of a second refund claim on the same basis as an earlier denied claim does not extend the two year statute of limitations period. This point of law advanced by the Government is well taken.[3] The case of *Huettl v. U.S.*, 675 F.2d 239 (9th Cir.1982), provides a helpful summary:

"A taxpayer generally may file more than one administrative refund claim within the statutory period applicable to the filing of claims with the IRS.... However, a second claim for refund on grounds identical to those in the first does not extend the two year limitations period of I.R.C. § 6532(a)(1) for bringing suit in a district court.... For purposes of limitations on suit, it makes no difference that the IRS acted on the second claim ... and this is true even where the taxpayer meets the statute of limitations for filing with the IRS on the second claim...."

*Id.* at 241–42 (cites omitted).

The Second Circuit had earlier noted the reasoning which supports the rule reannounced in *Huettl.*

"The thought that the period may be extended or the running of the time interrupted by filing a second claim for refund based on one of the grounds covered by the first claim and already disallowed cannot be countenanced. Such a result would put it in the power of a taxpayer to enlarge the time set by statute for commencing suit and would be a departure from settled rules applicable to statutes of limitations."

*Einson-Freeman Co. v. Corwin*, 112 F.2d 683, 684 (2d Cir.) *cert. denied* 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 44 (1940).

Given this state of the law, the Plaintiff has, *inter alia*,[4] submitted that the second set of claims for refunds was based on different grounds than the first. He relies upon the case of *Charlson Realty Co. v. U.S.*, 384 F.2d 434, 181 Ct.Cl. 262 (1967). In *Charlson*, the plaintiff had sold land, arguably worth $90,000.00, to the mother and sister of the sole stockholder for $40,000.00. The IRS thereafter assessed the plaintiff with an income tax deficiency in the sum of $12,500.00 plus interest. The IRS contended that the sale resulted in a distribution of a taxable dividend to the plaintiff's sole stockholder. The IRS also contended that the plaintiff had realized a gain of $50,000.00. After paying the deficiency, the plaintiff applied for a refund. It assigned as the single ground an argument that the company had not realized a gain on the land sale. While the first refund claim was still pending, the plaintiff filed a second claim for the same amount but assigned additional grounds. The IRS denied both claims on different dates. As in the instant case, the first denial was more than two years prior to the time the plaintiff filed suit, while the second denial was within two years of suit.

The *Charlson* court noted that simply because the refund claims were for the same amount was not controlling. Rather, the court looked at the grounds assigned in the two sets of refund claims to determine whether they were identical. The court found that the second claim for refund, "[i]n addition to setting forth the above grounds contained in the first claim, alleged various other and different grounds and theories for recovery." *Id.* 384 F.2d at

---

**3.** The courts appear to be in rare agreement on the principle relied upon by the Government. *Huettl v. U.S.*, 675 F.2d 239 (9th Cir.1982); *Union Commerce Bank v. U.S.*, 638 F.2d 962 (6th Cir.1981); *Bauer v. U.S.*, 594 F.2d 44 (5th Cir. 1979); *Kelson v. U.S.*, 503 F.2d 1291 (10th Cir. 1974); *Stratmore v. U.S.*, 463 F.2d 1195 (3d Cir.1972); *18th St. Leader Stores, Inc. v. U.S.*, 142 F.2d 113 (7th Cir.) *cert. denied* 323 U.S. 725, 65 S.Ct. 61, 89 L.Ed. 583 (1944); *Einson-Free-*

*man Co. v. Corwin*, 112 F.2d 683 (2d Cir.) *cert. denied* 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 44 (1940); *Allstate Ins. Co. v. U.S.*, 550 F.2d 629 (Ct.Cl.1977); *Smith v. U.S.*, 539 F.Supp. 137 (D.Neb.1982).

**4.** Other grounds assigned by the Plaintiff are discussed *infra.*

439. Specifically, the *Charlson* plaintiff, in its second claim for refund, set forth at least nine additional grounds. It is unnecessary to spell out here those nine grounds; it is sufficient to merely note that they were such that the second claim bore little resemblance to the first.

This case, *Charlson,* is the bridge upon which the Plaintiff hopes to safely cross the troubled waters created by his twice filing refund claims instead of proceeding to Court. There are problems, however, in the Plaintiff's reliance on *Charlson.* Basically, this Court is unconvinced that the Plaintiff's second set of refund claims was different than the first set.

Looking first at the initial set of refund claims, it can be seen that the claims of $1,639.00 for 1976 and $61,200.64 for 1977 are both a result of the NOL for 1979 being carried back. The refund claim for 1976 in the second set is $2,095.14. The Plaintiff has pointed out the difference in the figures, but he gives no reasons for the difference. Counsel for the Government, on the other hand, points out that the figures should have been $2,095.14 for both years. Counsel contends that a "typographical error" of $456.14 in "other taxes" should not have reduced the first claim. The Court agrees. Moreover, the Plaintiff does not assert that he assigned different grounds to support his request for a refund of $2,095.14. If refund claims cannot be considered identical merely because they recite the same figures, neither can they be said to be dissimilar merely because of different figures.

■ As regards the taxable year 1977, the Plaintiff first requested a refund of $61,200.64. In his second set of refund claims, however, the figure was increased to $77,232.05. There are two factors which increased this figure. Neither negates the underlying reality that the second refund claim for 1977 was the same as the initial one. First, in his second set of refund claims, the Plaintiff claimed an investment tax credit. The tax credit had been unused in 1976 and the Plaintiff attempted to carry it over to 1977. It was unused in 1976 because the NOL carried back from 1979 had eliminated all income for that year. Therefore, the investment tax credit claimed in 1977 was merely a direct outgrowth of the NOL carryback which had been disallowed by the IRS in the first set of refund claims. Such an extension of the claim does not change its foundation. Second, the Plaintiff, in his second set of refund claims, asserts that his income for that year should be reduced by $54,168.34 because that amount represented the repayment of a loan and not taxable income. The Government, however, quite properly points out that the Plaintiff raises this claim some six years after it accrued. Hence, it is barred by the three year statute of limitations for filing an administrative refund claim. 26 U.S.C. § 6511(a). The question thus becomes whether the Plaintiff can extend the limitations period for filing a lawsuit for judicial review by assigning grounds which could not be considered at the administrative level. The Court thinks not. A taxpayer cannot be said to have provided additional grounds if such grounds are unavailable for review on their face.

Therefore, the Court finds that the two sets of refund claims filed by the Plaintiff, in respect to the taxable years 1976 and 1977, are identical. The task does not end here, however, because the Plaintiff is alternatively arguing that the denial letter dated August 6, 1982, was legally insufficient and that, in any event, the IRS's denial letters of October 4, 1983, now estop the Government from asserting the statute of limitations defense.

C. *Sufficiency of First Notice of Disallowance.*

■ Turning first to the sufficiency of the August 6, 1982, letter, the Court notes that the Plaintiff is relying upon Treasury Regulations § 301.6532–1(a). That regulation provides, in pertinent part, as follows:

"[N]o suit or proceeding for the recovery of any internal revenue tax, penalty, or other sum may be brought after the expiration of 2 years from the date of mailing by registered mail prior to September

**834**

3, 1958, or by either registered or certified mail on or after September 3, 1958, by a district director, a director of an Internal Revenue Service Center, or an assistant regional commissioner to a taxpayer of a notice of disallowance of the part of the claim to which the suit or proceeding relates."

26 C.F.R. § 301.6532–1(a).

Based on the wording of this regulation, the Plaintiff argues that the August 6, 1982, letter was not signed by the appropriate IRS official. The record shows that the letter was signed by H. Larry Stewart, Associate Chief, Louisville Appeals Office. The Plaintiff contends that to comply with the regulation the letter should have been signed by "a district director, a director of Internal Revenue Service Center, or an assistant regional commissioner."[5] The Court finds that the Plaintiff reads too much and too little into the regulation. First, nowhere in the regulation is it required that the three designated officials must *personally* sign the notice of disallowance. Second, the Plaintiff fails to acknowledge that others in the regional commissioner's office could act for the assistant regional commissioner. *See* 26 C.F.R. § 601.106(a)(1)(i). The letter clearly indicates that it is from the regional commissioner's office, that it deals with the Plaintiff's claim for a refund and that it pertains to the taxable years 1976 and 1977. The Court finds no violence done to the Treasury Regulation relied upon by the Plaintiff.

D. *The Plaintiff's Estoppel Theory.*

 Finally, the Plaintiff contends that the Government is estopped by the October 4, 1983, letters from the district director. The letters each contained a section which advised the Plaintiff of his rights.

"If you wish to bring suit or proceedings for the recovery of any tax, penalties or

other monies for which this disallowance is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or the United States Claims Court. The law permits you to do this within two years from the mailing date of this letter. However, if you signed a waiver of notice of disallowance (Form 2297), the period for bringing suit begins to run on the date the waiver was filed."

The Plaintiff's argument is not totally without merit. Nonetheless, it fails to persuade here. It must be remembered that the October 4, 1983, letters were the result of the Plaintiff filing a second set of refund claims instead of filing suit. The Court has already concluded that those two sets of refund claims for 1976 and 1977 were basically identical. To allow the Plaintiff to rely upon Government form documents which were generated by his own nonobservance of procedures, would be to allow him to indirectly extend the statute of limitations—an act which is judicially disfavored.[6] *Union Commerce Bank v. U.S.,* 638 F.2d 962 (6th Cir.1981) (Government not estopped from raising the statute of limitations defense because its notice of disallowance of the amended complaint stated that the Plaintiff had two years in which to file suit for a refund).

### III. *Conclusion*

For the reasons given above, the Defendant's motion is granted. The Court ORDERS that the Plaintiff's complaint is dismissed with prejudice, with the exception of the claim for relief for the taxable year ending December 31, 1979.

---

**5.** The Plaintiff points out that the October 4, 1983, letters were signed by a district director.

**6.** The notice given by the letters of a two year statute of limitations must by necessity apply only to those grounds not previously denied by the IRS. Because of the uniform nature of the grounds assigned by the first and second sets of

refund claims for 1976 and 1977, the notice contained in the letter pertaining to those years was left with nothing to act upon in this instance. *See Kelson v. U.S.,* 503 F.2d 1291, 1293 (10th Cir.1974) (fact that IRS acted on the second claim is of no moment).