**In re Burt J. FIGEARO, f/d/b/a "Sierra Gold", Debtor.**

**Bankruptcy No. BK–N–86–131.**

United States Bankruptcy Court, D. Nevada.

Nov. 20, 1987.

Robert J. Fry, Fry, Fry & Ihara, Reno, Nev., for debtor.

Geoffrey L. Giles, Reno, Nev., for trustees.

Roland K. Martin, Jr., Beckley, Singleton, De Lanoy, Jemison & List, Ltd., Reno, Nev., for movant.

### MEMORANDUM DECISION

JAMES H. THOMPSON, Bankruptcy Judge.

This matter is before the court on creditor Steven Haley's motion[1] to determine

---

**1.** The court has allowed the parties to proceed by motion under Bankruptcy Rule 9014 rather

the nature and extent of a lien on money now in the possession of the Chapter 7 trustee.[2] The money represents the amount received by the trustee from the compromise of a fraudulent conveyance action involving a prepetition transfer of the debtor's inventory.

## JURISDICTION

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(b)(3), the court finds that this is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(K). Accordingly, the court shall enter a final order pursuant to 28 U.S.C. § 157(b)(1).

## FACTS

On January 17, 1985, the debtor granted a security interest in his jewelry inventory to Haley. The security interest was properly perfected and contained a broad after-acquired property clause.[3] There is no dispute that the inventory was originally subject to Haley's security agreement.

Prior to filing his bankruptcy petition, the debtor transferred a significant portion of his inventory to Pacific Pawnbrokers, Inc. ("Pacific"). The trustee filed suit against Pacific, claiming that the transfer was a fraudulent conveyance.[4] The trustee's suit was compromised for Two Thousand Five Hundred Dollars ($2,500.00). The court approved the compromise on August 25, 1987.

Haley argues that the money received by the trustee as a result of the compromise is subject to his security agreement because it constitutes proceeds from the sale or disposition of his collateral. It is the trustee's position that the money is from the compromise rather than from the sale or other disposition of collateral, and, therefore, does not constitute property or proceeds to which Haley's security interest can attach. The trustee concludes that money received from the compromise should be available for distribution to unsecured creditors.

## DISCUSSION

Haley argues that the debtor's prepetition transfer to Pacific violated the bulk transfer provisions of the Uniform Commercial Code, NRS 104.6101—104.6111, and the Uniform Fraudulent Conveyance Act, NRS 112.010—112.130. If so, Haley could have avoided the transfers under these state law provisions.[5] NRS 104.6104, 112.100, and 112.110. Haley concludes that since he could have obtained this remedy

than than adversary proceeding as required by Bankruptcy Rule 7001(2). There are no material facts in dispute. The court will, therefore, treat this matter as if raised in the context of joint motions for summary judgment.

2. The court has ruled at the hearing on this matter that Haley's lien does attach to any inventory items in the trustee's possession. The court's discussion here is limited to whether the lien also attaches to the money.

3. Collateral is defined in the security agreement in relevant part as follows:

All ... general intangibles, choses in actions, ... and all other debts, obligations and liabilities in whatever form owing to debtor from any person, firm, governmental authority, corporation, or any other entity and all security therefore and all of debtor's rights to goods sold (whether delivered, undelivered, intransit, or returned) which may be represented whether now existing or hereafter arising together with all proceeds and products thereof.

The security interest also consists of any other or additional personal property, inventory, ... or other personal property, ... now or at any time hereafter located in or on the [debtor's business premises].

4. The trustee's complaint was based on 11 U.S.C. § 548 and alleges that within one year prior to filing his Chapter 7 petition, the debtor transferred property worth $20,000 to Pacific for $1,200. Mr. Haley's proof of claim in the amount of $7,342 was filed March 19, 1987. The proof of claim indicates that the claim is secured based on an installment note, security agreement and filed financing statement.

5. Although the trustee chose 11 U.S.C. § 548(a) to avoid the transfer to Pacific, in all likelihood, he could have used the state law provisions relied on by Haley in conjunction with his avoiding powers under 11 U.S.C. § 544(b) to avoid the transfer.

under state law,[6] any recovery by the trustee in a similar action under the Bankruptcy Code should also accrue to his benefit.

Several cases have addressed the issue of whether the recovery of property by the estate through the trustee's avoiding powers remains subject to a prepetition perfected security interest. The majority of cases hold in favor of the secured creditor. In *In re Mid–Atlantic Piping of Charlotte*, 24 B.R. 314, 321–325 (Bankr.W.D.N.C.1982), the court held that since the secured creditor's security interest extended to the property preferentially transferred by the debtor, any recovery by the trustee in the preference litigation would also be subject to the security interest. In *In re Cambria Clover Mercantile Co.*, 51 B.R. 983, 986 (Bankr.E.D.Penn.1985), the court concluded that the language of 11 U.S.C. § 552(b) does not mean that a prepetition security interest may never extend to property acquired by a trustee in a preference action.[7] Finally, in *In re Lively*, 74 B.R. 238 (S.D. Ga.1987), the District Court held that the trustee's recovery from the settlement of a fraudulent conveyance action involving the debtor's postpetition inheritance was subject to the secured claims of prepetition judgment lienholders.[8]

At least one court has held against the secured creditor. In *In re Integrated Testing Products Corp.*, 69 B.R. 901 (D.N.J. 1987). The sole issue before that court was whether a secured creditor retains a perfected security interest in funds recovered by a trustee in preference litigation. The parties stipulated that "the funds paid over to creditors, which were later recovered as preferences, were cash proceeds of the sale of collateral in which the appellant had a security interest." *Id.* at 903. The court held that since the secured creditor did not have any security interest in the trustee's right to recover the preferences under state law, it had no security interest in the recovered funds.[9] *Id.* at 905.

As suggested in *Integrated Testing*, this court's analysis must begin with 11 U.S.C. § 552 which specifies the postpetition effect of a security interest. Generally, any property acquired by the estate after the commencement of the case is not subject to a prepetition security interest. § 552(a). This rule is designed to limit the effect of a security agreement containing an after-acquired property clause. The general rule is subject to an exception which provides that the secured creditor's interest in proceeds from secured collateral continues. The exception is found in § 552(b) which provides in relevant part:

> (b) [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, prod-

---

**6.** Any recovery by the trustee would be property of the estate. 11 U.S.C. § 541(a)(3). Therefore, any postpetition attempt to set aside the transfer or levy on the property was stayed when the debtor filed his bankruptcy petition. 11 U.S.C. § 362(a)(3) and (4).

**7.** The court did not discuss whether 11 U.S.C. §§ 552(a) (Postpetition effect of security interest) or 550(a) (Liability of transferee of avoided transfer) prevent the attachment of a prepetition perfected Article 9 security interest to funds recovered by a trustee in a preference action.

**8.** The court noted that the language of 11 U.S.C. § 552(a) is implicitly limited to consensual security agreements and is not applicable to judicial liens which may attach to after-acquired property of the debtor. *Id.* at 239. Therefore, the *Lively* court may have reached an opposite result had the creditor's lien been an Article 9 security interest rather than a judicial lien. However, it is interesting to note that the court

held in favor the secured creditor notwithstanding the language of 11 U.S.C. § 550(a) that indicates the trustee's recovery is for the benefit of the estate.

**9.** The stipulation that the property recovered by the trustee was subject to a prepetition security interest, if relied on by the court, appears to place the *Integrated Testing* decision directly at odds with *Mid–Atlantic, Cambria Clover Mercantile*, and, *Lively*. The underlying basis for the stipulation, presumably 9–306(4) of the Uniform Commercial Code, is not clear from the opinion. The primary focus of the opinion was that the trustee's right to recover the preference was not identifiable noncash proceeds under 9–306(4)(a). The court did not discuss, but, based on the stipulation, appears to have assumed that the property recovered was identifiable cash proceeds under 9–306(4)(b), (c), or (d).

uct, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing based on the equities of the case, orders otherwise.

The facts before this court present two issues under § 552 that the court must consider. The first issue is whether the right to avoid transfers under the trustee's various avoiding powers constitutes proceeds, product, offspring, rents, or profits of the inventory as provided in the security agreement and applicable nonbankruptcy law. If so, the security interest would extend to any recovery by the trustee under § 552(b). The second issue, which involves the interpretation of 11 U.S.C. § 552(a), is whether any property recovered by the trustee under his avoiding powers remains subject to any security interest that was enforceable against the transferee of the avoided transfer.

The holding in *Integrated Testing*, addressed, and clearly resolved the first issue against the secured creditor. Proceeds are defined in the Uniform Commercial Code as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." NRS 104.-9306(1). "Money, checks, deposit accounts and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.'" *Id.* The trustee's right to set aside the transfers, arguably contingent noncash proceeds, is created on the filing of the bankruptcy petition. Further, the trustee is generally the only party in interest with standing to pursue these rights. *See* 69 B.R. at 904. Although the trustee's rights are dependent on the nature of the transfer, they are not received upon the sale, exchange, collection or other disposition of collateral or proceeds. Therefore, the

trustee's right to set aside a fraudulent transfer can not be considered proceeds under NRS 104.9306(1). As a result, § 552(b) does not extend Haley's security interest to the right to set aside and recover property based on the trustee's avoiding powers.

Having determined that Haley has no security interest in the trustee's right to set aside a fraudulent conveyance, the court turns to the issue of whether Haley's security interest attaches to the property recovered by the trustee.

The parties agree that Haley's security interest was properly perfected and attached to the inventory transferred to Pacific. In addition, the court finds Haley's security interest continued in the inventory items after the transfer to Pacific pursuant to NRS 104.9306(2) and 104.9307 (buyer's rights on disposition of collateral under Article 9),[10] or 104.6104 (ineffective bulk transfer).

In addition to holding the property subject to Haley's security interest, Pacific's liability to the trustee as the transferee of an avoided transfer is set forth in 11 U.S.C. § 550 which provides in relevant part as follows:

(a) [t]o the extent that a transfer is avoided ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee....

The introductory language of § 550(a) indicating that the trustee's recovery is for the benefit of the estate is derived from *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed.133 (1931). *See* Collier, § 550.02 n. 3 (15th Ed.1979). In *Moore*, the bankrupt executed and failed to perfect a chattel mortgage. Credit had been extended to the bankrupt before and after the chattel mortgage was finally perfected. The mortgage was ultimately avoided by the trustee. The issue before the Court was whether the chattel mortgage should be deemed void against all creditors or only those ex-

---

**10.** The security agreement contained restrictions on the sale or disposition of the collateral. Nothing in the security agreement indicates that

Haley consented by implication to the type of transfer at issue. The transfer was clearly not in the ordinary course of the debtor's business.

tending credit prior to perfection. Reversing the Court of Appeals, the Supreme Court held that the lien was void as to all creditors. 284 U.S. at 5, 52 S.Ct. at 3. In other words, "recovery by the bankruptcy trustee of property conveyed in fraud of one class of creditors nevertheless inures to the benefit of all classes of general creditors...." Collier, § 548.03.

■ The law established in *Moore* is well settled, and has been clearly incorporated into the Bankruptcy Code. Without question, any property recovered by the trustee as a result of an avoided transfer must be distributed to creditors in their order of priority to the extent the estate has equity in the property recovered. At issue, is whether the collateral, subject to Haley's properly perfected security interest in the hands of Pacific, was extinguished by the trustee's recovery of the property, or its value under 11 U.S.C. § 550. The resolution of this issue requires interpretation of 11 U.S.C. § 552(a) which provides in relevant part as follows:

(a) [P]roperty acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

■ As previously stated, the purpose of 11 U.S.C. § 552(a) is to avoid the postpetition application of an otherwise valid after-acquired property clause in a security agreement. The statute allows the estate to acquire new property with estate assets free of the security interest. Applying § 552(a) to avoid a security interest in property recovered through the trustee's avoiding powers appears to go beyond what the statute was designed to accomplish. In any event, the crucial question is whether

the avoidance of a fraudulent transfer under 11 U.S.C. § 548 and recovery of the property [11] under 11 U.S.C. § 550 constitutes an acquisition of property by the estate within the meaning of 11 U.S.C. § 552(a).

This court holds that such an avoidance and recovery of property by the trustee is not equivalent to a postpetition acquisition of property by the estate as contemplated by 11 U.S.C. §§ 552(a) or 541(a)(7). It is this court's opinion that the estate's interest in the transferred property was acquired upon commencement of the case. 11 U.S.C. § 541(a)(3). The transferee merely held voidable title to the transferred property. *See* 11 U.S.C. § 548(c). The successful exercise of the trustee's avoiding power causes the affected transfer to become void, allowing the trustee to recover the property under 11 U.S.C. § 550. Any property recovered by the trustee was subject to Haley's security interest at the time the debtor transferred the property to Pacific and continued in the property after the transfer. Were the trustee to recover the property from Pacific free of any prepetition encumbrances, he would recover a greater interest in the property than that held by Pacific or the debtor prior to the transfer.[12]

## CONCLUSION

■ Having found that Haley's security interest does not attach to the trustee's right to set aside a fraudulent transfer but does attach to the recovered property, the court concludes that the funds held by the trustee as a result of the compromise of the fraudulent conveyance litigation is subject to Haley's security interest.

**11.** This court approved a compromise reached between Pacific and the Trustee. Under the compromise, the trustee received Twenty Five Hundred Dollars ($2,500.00) in satisfaction of his fraudulent conveyance claim against Pacific. The court finds no basis to treat Haley's claim against the trustee's recovery differently merely because the litigation was compromised and the trustee received a money satisfaction rather than the property in kind. Assuming the security interest attaches to the recovered property,

any rights in the property converted to cash by the trustee would constitute identifiable cash proceeds and remain subject to the security interest under NRS 104.9306(4)(b).

**12.** It is not clear that even a buyer in the ordinary course of Pacific's business would be protected from Haley's security interest under NRS 104.9307.