In re ELLINGSEN MacLEAN OIL CO., INC., a Corporation, and other related cases, Debtors.

OFFICIAL UNSECURED CREDITORS' COMMITTEE and Mobil Oil Company, Plaintiffs,

v.

The NORTHERN TRUST COMPANY and First National Bank & Trust Company of Escanaba, and Ellingsen MacLean Oil Co., Inc., and related Debtors, Defendants,

Soo Line Railroad Company, by its Successor in Title to the properties, Wisconsin Central Limited, Intervening Party.

Bankruptcy No. HM 84–00033.
Adv. No. 86–0325.

United States Bankruptcy Court, W.D. Michigan.

March 17, 1989.

---

Day, Sawdey, Flaggert & Porter, Larry A. Ver Merris, Grand Rapids, Mich., for plaintiff, Official Unsecured Creditors' Committee.

Varnum, Riddering, Schmidt & Howlett, Timothy J. Curtin, Grand Rapids, Mich., for plaintiff, Mobil Oil Co.

Gardner, Cortau & Douglas, David F. Heroy, Barbara A. Zahs, and Linda A. Peterson, of Chicago, Ill., for defendants, Northern Trust Co. and First Nat. Bank & Trust Co. of Escanaba.

Osstyn, Bays, Ferns & Quinnell, Donald W. Bays, Marquette, Mich., for defendants, Ellingsen MacLean Oil Co., Inc., and other related debtors.

Dunn, Schouten & Snoap, Eugene W. Pyatenko, Wyoming, Mich., for intervening party, Soo Line R. Co.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

This matter is before the court on a motion for summary judgment. On February 2, 1984, thirteen related debtors filed voluntary petitions seeking reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101–1146. On December 15, 1986, the Official Unsecured Creditor's Committee (Committee) and Mobil Oil Company (Mobil) filed this adversary proceeding seeking declaratory relief. In their prayer, Committee and Mobil asks:

that a determination be made as to the validity and extent of the claimed security interest of the Banks; that this Court enter an Order adjudging that the banks claimed security interest does not attach to any preferential transfer recoveries made or to be made by the Debtor; that such proceeds should not be turned over to said Banks' but rather should be held by the Debtors for distribution pursuant to the Bankruptcy Code and any Plan of Reorganization which may be filed herein. . . .

On January 21, 1987, the Northern Trust Company filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Subsequently, Committee and Mobil filed a first amended complaint on February 26, 1987. Thereafter, on March 18, 1987, the Northern Trust Company filed a motion to strike or dismiss the amended complaint. However, the Northern Trust Company withdrew this motion on July 27, 1987. Also on that same date, the Northern Trust Company and First National Bank & Trust ("the Banks") filed a motion to dismiss the first amended complaint, attaching the affidavit of Theodore Tice thereto. By submitting matters outside the pleadings, the motion to dismiss was converted to a motion for summary judgment. Fed.R.Civ.P. 12(b).

On October 21, 1987, Soo Line Railroad (Soo Line) filed a motion for authority to intervene. After notice and a hearing, the court allowed Soo Line to intervene. Soo Line filed its complaint, and subsequently submitted briefs against the Banks' motion to dismiss.

## I. JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This adversary proceeding constitutes a core proceeding. 28 U.S.C. § 157(b)(2)(k).

## II. FACTS

Prior to filing bankruptcy, Ellingsen MacLean Oil Company, Inc., and the twelve other Debtors, (the entire group of thirteen petitioners will be referred to as "the Debtors") operated wholesale oil and petroleum products businesses in the States of Michigan and Wisconsin. The Banks financed many of the Debtors' operations. Pursuant to a prepetition loan agreement, the Banks claimed valid, perfected, first security interest, liens and encumbrances in all of the Debtors' assets, including their accounts receivable, inventory, equipment, machinery, general intangibles and particular real estate and fixtures. On February 2, 1984, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

After filing, the Debtors operated as Debtors in possession and experienced further financial trouble.[1] The Banks had security interest in substantially all the debtor's assets. The debtors were unable to secure additional financing. The Debtors and the Banks entered into an Agreed Order which allowed the debtors to use their assets, including cash collateral. Further, the Agreed Order allowed the Debtors to borrow an additional $500,000 from the Banks. In order to obtain the additional financing the Debtors granted the Banks a security interest in all property of the estate pursuant to § 364 of the Bankruptcy Code. 11 U.S.C. § 364. The Debtors also agreed to make adequate protection payments to the Banks.

The Debtors financial woes continued and when the Debtors failed to make the adequate protection payments, the Banks brought a motion for relief from stay. In order to settle the motion for relief from stay, the Debtors entered into another financing agreement, the Amended Order. The Amended Order authorized the extension of new credit, including an immediate advance of $60,000 cash and $175,000 made available in the form of a letter of credit. As an incentive for the Banks to extend this additional credit, the Debtors agreed to "settle all controversies regarding the va-

---

1. The court acknowledges the difference between the powers of a debtor and those of a debtor in possession. However, for shorthand purposes the court will refer to the debtors in possession as "the Debtors".

lidity of the Banks' security interest ... by waiving any objection they may have with respect thereto...." The order further specifically stated that the validity of the liens granted "shall not be affected on appeal by reversal or modification of the authorization contained herein unless this Order is stayed pending appeal." After an emergency telephonic hearing, the bankruptcy court entered the Amended Order. The Committee immediately appealed the Amended Order. However, the Committee failed to obtain a stay pending appeal as required by § 364(e). 11 U.S.C. § 364(e). As a result, the district court and the court of appeals dismissed the Committee's appeal. *Unsecured Creditors' Committee v. First National Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599 (6th Cir.1987).

As part of its operation, one of the debtors, Bay De Noc Oil Co., Inc., leased property from Soo Line in Marquette, Michigan. Another debtor, Wisconsin Oil Co., Inc., leased property from Soo Line in Rhinelander, Wisconsin. These two Debtors had facilities for bulk oil storage and·filling stations. These Debtors owe Soo Line for both prepetition and postpetition rent. Soo Line claims to be an unsecured claimant as to the prepetition rent and an administrative claimant as to the postpetition rent. Soo Line also claims the Debtors contaminated the leasehold properties as a result of leakage from storage tanks located on the properties. Further, Soo Line claims it or its successor may ultimately be liable for the contamination under applicable state and federal law. As of this date the Debtors have not been held liable on any environmental claims.

This adversary proceeding involves two separate funds held by the estate. One fund represents preference proceeds totalling $256,000 obtained by the Debtors by exercising their avoiding powers.[2] The other fund represents a distribution from a partnership interest held by one of the debtors, H.S. Ternus Oil Company (Ternus). Ternus was a general partner in Marquette Developers pursuant to a partnership agreement dated January 2, 1969. Ternus held a 5.55% interest in the partnership. The principal asset of the partnership was a shopping center. The partnership sold the shopping center and disbursed the proceeds to the partners. Ternus' share of the proceeds totalled $84,090.[3]

The Banks claim to have a superior right to both funds. Counsel for the Debtors notified the Committee that unless the Committee took some action to assert its interest, the Debtors would distribute the funds to the Banks. The Committee promptly filed its complaint seeking declaratory relief.

## III. SUMMARY JUDGMENT

In the present case the Banks submitted the affidavit of Theodore Tice along with their motion to dismiss. The Banks claim that by submitting material outside the pleadings, the motion to dismiss is converted to a motion for summary judgment. *See generally* 5 Wright & Miller, Federal Practice and Procedure, § 1366 (1969 & Supp.1987). In support of this claim the Banks cite the last sentence in Fed.R.Civ.P. 12(b),[4] which provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (emphasis added)

The Committee objected to the Banks treating the motion as one for summary

---

2. Pursuant to 11 U.S.C. § 1107(a) and 11 U.S.C. § 547(b), a debtor in possession has the power to avoid preferential transfers. The total recovered represented $39,500 from Shell Oil Company, $82,500 from Amoco Oil Company, and $134,000 from Mobil Oil Company.

3. Taxes may be due and owing on the partnership proceeds.

4. Bankr.Rule 7012(b) provides that Fed.R.Civ.P. 12(b)–(h) applies to adversary proceedings.

judgment, claiming it was surprised by the Banks' actions. Plaintiff's Responsive Brief at p. 2. I cannot believe the Committee's counsel was surprised by the Banks' actions when the language of the Rule 12(b) clearly requires the conversion of a motion to dismiss to that of summary judgment. See *Wright v. Holbrook*, 794 F.2d 1152 (6th Cir.1986) (where a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion will be treated as a motion for summary judgment). Assuming that the Committee's counsel was surprised by the conversion of the motion, any prejudice was alleviated when the court allowed the Committee to respond with its own affidavit. See *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir.1975).

██ The committee also argues that the motion was labeled as a motion to dismiss and should be treated as such. However, the moving party is not required to explicitly label the motion as one for summary judgment. *Justice v. United States*, 616 F.Supp. 829, 830 n. 1 (D.W.Va. 1985). In fact either party may bring the automatic conversion by submitting material outside the pleadings. The court may exclude the extraneous material, but upon failure to do so the motion is converted to one for summary judgment. It is reversible error not to convert the motion. See *Dayco*, 523 F.2d 389; *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171 (6th Cir. 1971).

██ In deciding whether to except the extraneous material, the court must decide if the conversion will facilitate the disposition of the action. 5 Wright & Miller, Federal Practice and Procedure, § 1366 at 679 (1969 & Supp.1987). I believe conversion will facilitate the disposition of the present case. Therefore, because the parties submitted materials outside the pleadings, and these materials were not excluded by the court, the motion will be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Bankruptcy Rule 7056 adopts Fed.R.Civ. P. 56. Under Rule 56, the court shall grant a summary judgment if there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law. The court will apply this standard in disposing of the issues before the court.

## IV. PREFERENCE PROCEEDS

In the present case the Debtors have recovered preferential transfers totalling $256,000.[5] This case is before the court to determine which party has a right to these preference proceeds.

The trustee's power to avoid preferential transfers serves two purposes. One, it discourages a race to the court house by the creditors who may try to dismantle the debtor asset by asset. Two, it allows for an equal distribution of the debtor's assets by prohibiting the debtor from paying some creditors, while refusing to pay other creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78, *reprinted in* 1978 U.S.Code. Cong. & Admin.News, 5787, 5987, 6138.

The Banks claim they are entitled to the preference proceeds under three theories. First, the Banks claim they have prepetition liens which attach to the preference proceeds and continue in effect. Second, the Banks argue that if their prepetition liens do not attach to the proceeds, then their postpetition liens give them a security interest in the proceeds. Finally, the Banks contend that even if the court finds the Banks have no security interest in the proceeds, the Banks are still entitled to the preference proceeds because of the superpriority granted in the Agreed Order and the Amended Order.

### A. *Prepetition Lien*

██ Committee's counsel has cited the interesting case of *Mellon Bank (East) v. Glick (In re Integrated Testing Products, Corp.)*, 69 B.R. 901 (D.N.J.1987). In that case in September 1982 Mellon Bank loaned $600,000 to the debtor. Mellon Bank received and perfected security interests in

---

5. For those who are interested, the case of *In re Hall*, 4 Am.Bankr.Rep. 671 (W.D.N.Y.1900), set forth in detail the early history of preferential transfers.

all existing and after acquired accounts receivable, contract rights, inventory, general intangibles and proceeds. In October 1982, the debtor filed a Chapter 11 petition. At that time Mellon Bank was owed approximately $147,000. The trustee recovered preferential transfers amounting to $50,000. Mellon Bank filed its complaint to obtain said funds claiming that they were proceeds or general intangibles. The trustee filed a motion for summary judgment which was granted by the bankruptcy judge. On appeal, the district judge affirmed. The parties assumed that for the summary judgment, the funds recovered were cash collateral in which Mellon Bank had an interest. In holding that Mellon was not entitled to the preference proceeds, the court stated that, "to allow Mellon to claim these preferences would frustrate the policy of equal treatment of creditors under the Code and would contradict the plain meaning of the Code." *Id.* at 905.

Although *In re Figearo*, 79 B.R. 914 (Bankr.D.Nev.1987), discusses *Mellon Bank*, it did not adopt its final conclusion. There, prior to filing a Chapter 7 petition, the debtor transferred a substantial portion of his inventory which was subject to a perfected security interest. The trustee settled a fraudulent conveyance claim for $2,500. The secured creditor filed a motion to determine the nature and extent of a lien on said fund. The court found that the security interest did attach to the recovered property and that the funds were subject to the security interest. The court in Figearo stated:

> Several cases have addressed the issue of whether the recovery of property by the estate through the trustee's avoiding powers remain subject to a prepetition perfected security interest. The majority of cases hold in favor of the secured creditor. In *In re Mid–Atlantic Piping of Charlotte*, 24 B.R. 314, 321–325 (Bankr.W.D.N.C. 1982), the court held that since the secured creditor's security interest extended to the property preferentially transferred by the Debtor, any recovery by the trustee in the preference litigation would also be subject to the security interest. In *In re Cambria Clo-*

*ver Mercantile Co.*, 51 B.R. 983, 986 (Bankr.E.D.Penn.1985), the court concluded that the language of 11 U.S.C. § 552(b) does not mean that a prepetition security interest may never extend to property acquired by a trustee in a preference action. Finally, in *In re Lively*, 74 B.R. 238 (S.D.Ga.1987), the District Court held that the conveyance action involving the debtor's postpetition inheritance was subject to the secured claims of prepetition judgment lienholders.

*Id.* at 916.

As a general rule, any property acquired by the estate after commencement of a case is not subject to a prepetition security interest. 11 U.S.C. § 552(a). However, the general rule is subject to the exception that the secured creditor's interest in proceeds from secured collateral continues postpetition. 11 U.S.C. § 552(b). The court in *Figearo* stated that applying the general rule "to avoid a security interest in property recovered through the trustee's avoiding powers appears to go beyond what the statute was designed to accomplish." *Id.* at 918. The court further stated:

> This court holds that such an avoidance and recovery of property by the trustee is not equivalent to a postpetition acquisition of property by the estate as contemplated by 11 U.S.C. §§ 552(a) or 541(a)(7). It is this court's opinion that the estate's interest in the transferred property was acquired upon commencement of the case. 11 U.S.C. § 541(a)(3). The transferee merely held voidable title to the transferred property. See 11 U.S.C. § 548(c). The successful exercise of the trustee's avoiding power causes the affected transfer to become void, allowing the trustee to recover the property under 11 U.S.C. § 550. Any property recovered by the trustee was subject to Haley's security interest at the time the Debtor transferred the property to Pacific and continued in the property after the transfer. Were the trustee to recover the property from Pacific free of any prepetition encumbrances, he would recover a greater interest in the property

than held by Pacific or the Debtor prior to the transfer.

*Id.*

Finally, the court held that the sum recovered by the trustee was subject to the prepetition security interest of the secured party.

It is my opinion that to hold that secured parties lose their prepetition lien as to the proceeds of preferential transfers would be contrary to the intent of Congress. The entire history of preferential transfers reflects an attempt to prevent inequitable treatment of creditors. In the present case all of the Debtors' collateral was subject to the Banks' liens. It appears that the unsecured creditors will get nothing. Thus, the only creditors harmed by the preferential transfers were the Banks. I do not believe that it was the intent of Congress that recovered preferential transfers would not inure to the benefit of the one creditor that was harmed by such transfer.

I would follow the reasoning of *Figearo.* I find that all of the Debtors' assets, other than some rolling stock, were subject to the Banks' prepetition liens. Further, I find that the prepetition liens attach to the preference proceeds. Thus, under *Figearo,* the Banks are entitled to the preference proceeds.

### B. *Postpetition Liens*

█ Even if I had found that the prepetition liens did not attach to the preference proceeds, the Banks would still be entitled to the proceeds under their postpetition security interest. As a general rule, debtors have a difficult time obtaining financing after filing bankruptcy. In order to encourage creditors to extend financing to debtors, Congress added § 364 to the Bankruptcy Code. 11 U.S.C. § 364. As an incentive to creditors, § 364 allows that any funds advanced postpetition to a debtor shall be secured by unencumbered assets or given priority as administrative claims under § 507(a)(1). 11 U.S.C. § 364 and 11 U.S.C. § 507(a)(1).

In the present case, the Debtors were unable to operate without obtaining additional financing. As a result, the Debtors entered into the Agreed Order with the Banks. The Agreed Order allowed the Debtors to use cash collateral and other assets which were subject to the Banks' liens. In order to obtain the additional financing, the Debtors granted the Banks liens in "all property of the estate and all proceeds thereof." [6]

Since the Debtors granted the Banks valid liens in all property of the estate, the only question is whether the preference proceeds are property of the estate. In *Merrill v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985 (Bankr. D.Utah 1984), *rev'd on other grounds,* 14 Collier Bankr.Cas.2d (MB) 1261 (D.Utah 1986), the court discussed two ways by which property recovered by the trustee would be included in the debtor's estate. The court stated:

> Section 541(a)(3) of the Bankruptcy Code provides that the debtor's estate includes any interest in property recovered by the trustee under Section 550. Section 550 permits the trustee to recover for the benefit of the estate property or value thereof from the transferee of an avoided transfer. Section 541(a)(4) provides that the debtor's estate includes any interest in property preserved for the benefit of or ordered transferred to the estate pursuant to Section 551. The latter section provides that any transfer avoided under Section 544, 547 or 548 is preserved for the benefit of the estate.

*Id* at 998. Property of the estate includes preferences recovered by the trustee. *Independent Clearing House,* at 998; *Ludwig v. Paradeis (In re Drake),* 28 B.R. 582, 583 (Bankr.E.D.Wis.1983).

For the reasons set out above, I find the preference proceeds are property of the

---

6. The Agreed Order provided in part:
   To secure the Liabilities and the portions of the Enterprise Fee subject to the Fee Security Interest described in paragraph 13 above, the Debtors in possession are authorized, ordered and directed to grant and hereby grant to the Banks and Enterprise a first and senior replacement lien upon all of the property of these estates and all proceeds thereof pursuant to section 364 of the Bankruptcy Code.

estate. To the extent the Banks advanced postpetition funds, I find the Banks have a valid postpetition security interest in the preference proceeds.

### C. *Superpriority* [7]

■ Assuming arguendo that the Banks' prepetition liens did not attach to the proceeds, and that the postpetition liens were invalid, I still would find the Banks were entitled to the preference proceeds because they were granted a superpriority in the Agreed Order and the Amended Order.[8] The Debtors granted a superpriority to the Banks pursuant to § 364(c)(1).[9] 11 U.S.C. § 364(c)(1). The court of appeals decided the superpriority issue in *Unsecured Creditors' Committee v. First National Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599 (6th Cir. 1987). There, the sixth circuit held that to the extent the Banks extended postpetition financing, the Banks would have a superpriority. *Id.* at 601. Any challenge to the Banks' superpriority status by the Committee would be precluded by res judicata. Thus, the Banks are entitled to a superpriority claim pursuant to § 364(c)(1) on any funds advanced postpetition.

## V. PARTNERSHIP DISTRIBUTION PROCEEDS

One of the debtors, H.S. Ternus Oil Company (Ternus), was a general partner of Marquette Developers. Ternus owned a 5.5% interest in the partnership. Marquette Developers liquidated its major asset, and distributed $84,090 to Ternus as its pro rata share of the partnership proceeds. The court must determine who has the superior right to these partnership proceeds.

### A. *Prepetition Security Interest*

■ The Debtors' prepetition loan agreements conveyed to the Banks a security interest in all of the Debtors' contract rights and general intangibles. The Banks claim that the prepetition security interest attaches to the partnership proceeds, and as a result, the Banks are entitled to the partnership proceeds. The Committee on the other hand, argues that the partnership proceeds are an interest in real property and the Banks are not perfected because they did not record the security interest as a mortgage.

I agree with the Banks' claim that the partnership proceeds are a general intangible. "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." Mich. Comp.Laws § 449.26 (1967) (Mich.Stat.Ann § 20.26 (Callaghan (1981)). The partnership proceeds represented Ternus' share of Marquette Developers profits and surplus. Section 440.9106 of the Michigan Complied Laws defines "general intangible" as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and mon-

---

**7.** A bankruptcy court's right to grant superpriority liens in reorganization cases has been recognized since the early days of reorganization provisions under Bankruptcy Act of 1898. See *Warren v. Palmer,* 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940); *Bogart v. Miller Land and Livestock Co.,* 129 F.2d 772 (9th Cir.1942); *In re Prima,* 88 F.2d 785 (7th Cir.1937).

**8.** The Agreed Order and the Amended Order both provided that:
    All liabilities other, than prepetition liabilities shall to the extent not paid from collateral granted herein, be accorded priority pursuant to Section 364(c)(1) of the Bankruptcy Code.

**9.** Section 364 provides in part:
    (a) If the trustee is authorized to operate the business of the debtor under 721, 1108, 1304, 1203, or 1204 of this title, unless the court order otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.
    (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.
    (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
        (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
        (2) secured by lien on property of the estate that is not otherwise subject to a lien; or
        (3) secured by a junior lien on property of the estate that is subject to a lien.

ey." Mich.Comp.Laws § 440.9106 (1967) (Mich.Stat.Ann. § 19.9106 (Callaghan 1981)). Thus, a partner's interest is a general intangible, and as such it is included in the Bank's prepetition security interest. Following *Figearo* and the earlier discussion concerning prepetition liens, I find the Banks' prepetition lien attaches to the partnership proceeds.

■ Any challenge to the validity of the prepetition security interest in the partnership proceeds would be precluded by res judicata. See *Ellingsen MacLean*, 834 F.2d 599. In *Ellingsen* the sixth circuit held that the Amended Order, which provided that the Debtors would not challenge any of Banks prepetition liens, was valid. Thus, the issue has already been decided. However, in case any doubt remains, I will briefly discuss the Committee's argument.

It is true that if the partnership proceeds were an interest in real estate, the Uniform Commercial Code would not apply and the security interest could be perfected only by recording it as a mortgage. However, courts have held that a contract for the sale of real property is personal property and falls within the definition of general intangible. *Northern Acres, Inc., v. Hillman State Bank (In re Northern Acres, Inc.)*, 52 B.R. 641 (Bankr.E.D.Mich.1985) (Vendors interest in Michigan Land contract); *I.A. Durbin, Inc., v. Jefferson National Bank (In re I.A. Durbin, Inc.)*, 46 B.R. 595 (Bankr.S.D.Fla.1985) (But, held no perfection because of improper description); *Borock v. NBD Dearborn Bank, NA. (In re D.J. Maltese, Inc.)*, 42 B.R. 589 (Bankr.E.D.Mich.1984).

In the present case, the Debtors did not grant a security interest in the partnership real estate, but only granted a security interest in the partner's interest. See *Stroebel–Polasky Co. v. Slachta*, 106 Mich. App. 538, 308 N.W.2d 273 (1981). The Committee fails to acknowledge the distinction between granting a security interest in a partner's interest and granting a security interest in specific partnership property. The former is allowed by Michigan statute, whereas the latter is prohibited. Mich. Comp.Laws § 449.27 (Mich.Stat. Ann.

§ 20.27 (Callahan (1981)); Minh.Comp.Laws § 449.25 (Mich.Stat. Ann. § 20.25 (Callaghan 1981)). I find the Debtors granted the Banks a security interest in the partner's interest and not in the specific partnership property. Thus, the Committee's argument necessarily fails.

**B.  *Post Petition Security Interest***

■ As with the preference proceeds, I find that even if the prepetition security interest does not not attach to the partnership proceeds, the Banks are still entitled to the partnership proceeds because the Banks have a valid postpetition security interest. The reasoning is basically the same as set out above concerning the Banks' postpetition security interest in the preference proceeds.

The Agreed Order granted a postpetition security interest in "all property of the estate." Property of the estate includes a partner's interest in the partnership. *In re Wallen*, 43 B.R. 408, 409 (Bankr.D.Idaho 1984). The intent of Congress to include a partner's interest in property of the estate was explicitly set forth when it enacted the Bankruptcy Reform Act of 1978. The legislative history provides:

> When a partner is a Debtor in a case under Title 11, the partner's interest in the partnership in which such partner is a partner is property of the partner's estate under 11 U.S.C. 541(a)(1).

H.R.Rep. No. 595, 95th Cong. 1st Sess. 199, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6159. Thus, the partner's interest is property of the estate, and as a result, the Banks have a valid lien in the partnership proceeds.

**C.  *Superpriority***

■ Assuming arguendo that neither the prepetition nor the postpetition security interests are valid, I would still find the Banks are entitled to the partnership proceeds because the Debtors granted the Banks a superpriority to the extent the Banks advanced funds postpetition. All parties agree that the Banks advanced at least $500,000 postpetition to the Debtors. Unless there are possible recoveries totalling more than $500,000, any prepetition

indebtedness would be immaterial. The funds available for distribution, including both the partnership and preference proceeds, total $340,090. The Unsecured creditors will not receive a dividend. Thus, it appears the Banks advanced funds postpetition far in excess of the recovered funds. Therefore, even if the Banks did not have a security interest in the recovered funds, they would be entitled to the funds pursuant to the superpriority granted by the Debtors in both the Agreed and Amended Orders.

## VI. RIGHTS OF THE INTERVENING PARTY

Soo Line has been granted the right to intervene. In their complaint, Soo Line claimed the Debtors contaminated the leased property and it had a right to be reimbursed for cleanup costs under § 506(c). 11 U.S.C. § 506(c). Further, Soo Line claimed it was an administrative rent claimant. These issues were previously before the court in *Soo Line Railroad Co. v. Bay De Noc Oil Co., Inc. (In re Ellingsen MacLean Oil Co.)*, Case No. HM 84–00033, Adv. No. 87–0031 (Bankr.W.D.Mich. May 26, 1988). This court dismissed the adversary proceeding with prejudice by order signed May 26, 1988. Therefore, under the principle of res judicata, Soo Line's complaint is dismissed.

## VII. CONCLUSION

The standard for ruling on a summary judgment is set out in Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Committee claims genuine issues of material fact exist, but I disagree. There may be genuine issues of fact, such as, exactly how much money the Banks advanced postpetition or exactly how much

the Debtors repaid to the Banks. However, I find these issues of fact immaterial. The Debtors possess funds totaling $340,090. All parties seem to agree that the Banks advanced at least $500,000 postpetition to the Debtors. Under any of the three theories, the Banks have priority in all available funds.

The Committee members will not receive a dividend. Therefore, although genuine issues of fact may exist, I find these issues immaterial. Further, for the reasons set forth in this opinion I find the Banks are entitled to judgment as a matter of law. Accordingly, summary judgment is hereby granted.