**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clinton O. McMULLIN, Defendant–Appellant.**

**McMullin Family Trust, and Laura J. McMullin, Defendants.**

No. 90–5077.

United States Court of Appeals, Tenth Circuit.

Nov. 13, 1991.

---

Anderson, with him on the brief), Tulsa, Okl., Sp. Counsel, for defendants-appellants.

Before BALDOCK and McWILLIAMS, Circuit Judges, and DUMBAULD, District Judge.*

McWILLIAMS, Circuit Judge.

On January 9, 1987, the United States brought the present action in the United States District Court for the Northern District of Oklahoma against Clinton O. McMullin and his wife, Laura J. McMullin, and the McMullin Family Trust, seeking to foreclose a federal tax lien against improved real property located in Mayes County, Oklahoma, for the income tax liabilities of Clinton and Laura McMullin. In its complaint, the United States alleged that it had a valid lien against the subject property which Clinton McMullin had purported to convey to the McMullin Family Trust, and that the trust was only his alter ego. The relief sought by the United States was an order that the subject property be sold, either by administrative process or at judicial sale, and that the proceeds thereof be applied towards the tax liabilities of Clinton and Laura McMullin.

The McMullins filed a *pro se* motion to dismiss for lack of jurisdiction. This motion included a demand for a jury trial. The district court denied the motion to dismiss and in so doing struck the taxpayers' demand for a jury trial, stating that because the action, as then filed, was purely equitable in nature, the taxpayers accordingly had no right to a jury trial. *See United States v. Annis*, 634 F.2d 1270, 1272 (10th Cir.1980).

On April 4, 1988, the United States filed a motion for summary judgment in its favor on the question of whether the taxpayers were in fact indebted to the United States for unpaid federal income taxes and whether the government's tax liens could reach the property held by the family trust in order to collect taxes owed by the trust's

Deborah Swann (Gary R. Allen and Ann B. Durney, Attorneys, Tax Div., Dept. of Justice, Shirley D. Peterson, Asst. Atty. Gen., of counsel: Tony M. Graham, U.S. Atty., Washington, D.C., with her on the brief), for plaintiff-appellee.

Albert J. Givray (Kristen L. Gordon of Doerner, Stuart, Saunders, Daniel &

* Honorable Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

grantors. This motion was supported by numerous exhibits. On the same day, the taxpayers filed an answer wherein they challenged the correctness of the tax assessment.

On September 21, 1988, the district court granted partial summary judgment in favor of the United States "on the issue of fraudulent transfer." However, the district court also stated that "the validity of the assessment as to the amounts assessed, remains an issue for trial."

On January 18, 1989, taxpayers filed another motion for jury trial. The government opposed this motion on the ground that the action was still essentially an action to foreclose tax liens on certain realty, and therefore, being equitable in nature, did not give rise to a right to a jury trial. The district court agreed with the government and denied the motion. The taxpayers filed an objection to the district court's denial of their request for a jury trial, which objection was denied.

A bench trial of this case occurred on January 2 and 3, 1990, at which time the taxpayers appeared *pro se*. The government called two witnesses who testified in some detail and identified numerous documents which were received into evidence. The government called Clinton McMullin as a witness, but he asserted his Fifth Amendment rights and declined to testify. Neither of the McMullins testified by way of defense nor did they call any other witness. Based on the evidence before it, the district court held that the taxpayers were liable to the United States for the amount of unpaid taxes, penalties, and interest assessed against them. Clinton McMullin filed a notice of appeal, and he will hereinafter be referred to as the "taxpayer."

An opening brief was filed in this court by the taxpayer, appearing *pro se*. However, it would appear that in preparing his brief in this court, taxpayer had some legal assistance. Notwithstanding, or perhaps because of, taxpayer's brief is, in the main, difficult to follow. The government also filed a brief urging this court to affirm the judgment of the district court. Both briefs made only passing reference to the district court's denial of taxpayer's request for a jury trial.

Another panel of this court was of the view that the denial of taxpayer's request for a jury trial merited closer examination and ordered supplemental briefing on that one issue. In connection therewith, this court also appointed counsel to represent the taxpayer, both in connection with supplemental briefing and oral argument before this panel.

As we understand it, counsel for the taxpayer and the government both agree that when the government only seeks to enforce its tax lien against a taxpayer's property, the taxpayer has no right to a jury trial since the action sounds in equity. *United States v. Annis*, 634 F.2d 1270, 1272 (10th Cir.1980). Further, we understand that counsel also agree that where the government seeks to reduce a tax assessment to judgment and obtain a personal money judgment against the taxpayer, the taxpayer then has a Seventh Amendment right to a jury trial. *See United States v. Anderson*, 584 F.2d 369, 373 (10th Cir.1978). It is our further understanding that counsel now agree that in a proceeding such as the present one, where the government seeks both equitable and legal relief, i.e., foreclosure of a tax lien and a money judgment, the taxpayer under the Seventh Amendment is entitled to a jury trial on the legal issues, i.e., the claim for a money judgment. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1969); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473, n. 4, 82 S.Ct. 894, 897, n. 4, 8 L.Ed.2d 44 (1962); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir.1988); *United States v. State of New Mexico*, 642 F.2d 397, 399–400 (10th Cir. 1981); and *United States v. McMahan*, 569 F.2d 889 (5th Cir.1978).

In this court, the government argues that even though the taxpayer had a right to jury trial on the legal issue raised in the motion for summary judgment, the taxpayer never made a timely demand for a jury trial. In response to the complaint, the taxpayer did make a timely demand for a

jury trial. However, the government points out, and correctly so, that the complaint requested equitable relief only, and accordingly that particular request for a jury trial was properly denied. Although we find no amended complaint in the record before us, the government contends that in its motion for summary judgment it expanded its action to include a claim for legal relief, to which taxpayer made no timely demand for a jury trial. It does appear, however, that taxpayer made two subsequent requests for jury trial, perhaps untimely, both of which were denied. However, the district court did not deny taxpayer's request for jury trial because such was untimely.[1] And of course the taxpayer, a rancher and part-time self-employed carnival concessionaire, and his wife appeared *pro se*. Under such circumstances, we are not inclined to sidestep this very important constitutional right on the ground that the request for jury trial was untimely.

The government's final argument is that under the circumstances any error was only harmless error. As indicated, there was a bench trial in this case. The government contends that if there had been a jury impaneled to hear the case, the district court, on the basis of the testimony before it, would have been required to direct the jury to return a verdict in favor of the government, *ergo*, harmless error. And at oral argument, counsel for taxpayer agreed that if the state of the record before the district court was such as to have required a directed verdict in favor of the United States, then the denial of taxpayer's right to a jury trial would be harmless error.[2] Accordingly, we must examine the evidentiary matter before the district court at the bench trial below.

As indicated, at trial the government called two witnesses, Kenneth Sallee, a CPA and former employee of the Internal Revenue Service in Tulsa, Oklahoma, and James Gunter, an employee of the Internal Revenue Service in Oklahoma City, Oklahoma. Both participated in the audit of taxpayer's income tax returns for the three years here in question, and each testified as to what his investigation disclosed. Through these witnesses numerous documents were identified and received in evidence. This being a civil proceeding, the government called the taxpayer as an adverse witness. He, however, objected to being questioned, and the district court, believing that his answers might tend to incriminate him in future proceedings of a criminal nature, sustained the objection.

■ At this juncture the government rested its case. After some colloquy between the court and the taxpayer, wherein the court advised him of the risk involved if he put on no evidence, taxpayer stated that he and his wife would call no witnesses, whereupon the government moved for a "directed verdict." Thereafter the court, in effect, granted that motion, making findings and conclusions and then entering judgment in favor of the government. The final judgment decreed that the taxpayer was indebted to the United States for unpaid income taxes, penalties, and interest for the years 1977 through 1979, in a total sum of $19,160.96. The final judgment also incorporated therein matters previously determined on motion for partial summary judgment and in that regard decreed that the transfers made by the taxpayer to the McMullin Family Trust were invalid and attached federal tax liens to the described property and ordered them foreclosed with the taxpayer to be liable for

---

1. There is some suggestion that all motions for a jury trial were denied because both the government and district court were of the mistaken view that even though in its motion for summary judgment the government sought legal relief, the action was still one for equitable relief only. The government has since changed its position and now concedes that both legal and equitable relief was ultimately sought.

2. For Tenth Circuit cases indicating that, depending on the evidence, a directed verdict in a tax proceeding is proper, *see Ralston Development Corp. v. United States,* 937 F.2d 510, 515, n. 9 (10th Cir.1991); *United States v. State of New Mexico,* 642 F.2d 397, 402 (10th Cir.1981); and *Dakil v. United States,* 496 F.2d 431, 432 (10th Cir.1974).

any tax liability unsatisfied from such foreclosure.[3]

Under the circumstances described above, we conclude that the district court's denial of taxpayer's request for jury trial, which would only attach to the government's claim for a money judgment against the taxpayer, was only harmless error. Had there been a jury the result would have been the same, i.e., a directed verdict for the government.

As mentioned, this court appointed counsel to represent the taxpayer in this court with directions that both appointed counsel and government counsel file simultaneous briefs addressing the question of whether a defendant has a right to a jury trial in an action where the government seeks not only enforcement of its tax lien but also seeks a determination of the validity of the amount assessed and reduction of that assessment to judgment. At oral argument appointed counsel argued that one matter. However, as mentioned, the taxpayer filed a *pro se* brief in this court in which he argues that the entire judgment should be reversed, i.e., the final judgment reflecting both the partial summary judgment and the bench trial. Our study of the record convinces us that the judgment should be affirmed in its entirety.

 In a suit brought by the government to collect taxes resulting from unreported income, the government generally establishes a *prima facie* case when it shows a timely assessment of the tax due, supported by a minimal evidentiary foundation, at which point a presumption of correctness arises. *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir.1983); *Koscove v. Commissioner of Internal Revenue*, 225 F.2d 85, 87 (10th Cir.1955). A presumption of correctness attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income. *See Doyal v. Commissioner of Internal Revenue*, 616 F.2d 1191, 1192 (10th Cir.1980); *Weimerskirch v. Commissioner*, 596 F.2d 358, 360 (9th Cir. 1979); and *Wallis v. C.I.R.*, 357 F.2d 313, 314 (10th Cir.1966). This presumption will permit judgment in the Commissioner's favor unless the opposing party produces substantial evidence overcoming it. *Long v. Commissioner*, 757 F.2d 957, 959 (8th Cir.1985); *Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir.1982).

The government's evidence met the foregoing test. Taxpayer produced no evidence. We reject any suggestion that the taxpayer's *pro se* cross-examination of the two government witnesses created issues of fact requiring submission to a jury.

Judgment affirmed.

---

**3.** The McMullins had neither records nor receipts for the time period in question. The McMullins advised the investigating agents that the records and receipts were destroyed when, pursuant to an argument, their grandchildren threw the documents into the fireplace. For this reason the IRS agent reconstructed their income by using statistical abstracts printed by the United States Department of Commerce, Bureau of Census. This was done by determining what a couple in the lower budget range in a non-metropolitan area would have to spend for basic necessities. To this base-line amount, which was greater than the taxable income that taxpayers had reported on their returns, the agent added certain of taxpayers' personal expenditures. These expenditures were shown by check disbursements, which did not fall under the categories of food, housing, transportation, clothing, personal and medical care already accounted for by the statistical abstract. The agent also added to taxpayers' income purchases of stock because these expenditures also indicated additional income. As a result of the audit it was determined that the McMullins' income was approximately 25% greater than reported.