986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Counter- Claim-Defendant-Appellee,
v.
Ellis A. NEILSON and Carmel Neilson, Defendants,
and
L. Shyrl Brown and Ila D. Brown, Defendants-
Counter-Claimants-Appellants.
 No. 91-4175.
 United States Court of Appeals, Tenth Circuit.
 Dec. 23, 1992.
 
 1
 Before JOHN P. MOORE and TACHA, Circuit Judges, and SAFFELS,* Senior District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DALE E. SAFFELS, Senior District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 The United States brought this action against defendants L. Shyrl Brown and Ila D. Brown to reduce to judgment Mr. Brown's unpaid tax liability, to set aside as fraudulent Mr. Brown's conveyance of real property to Mrs. Brown, and to foreclose federal tax liens against the fraudulently transferred property. The district court entered judgment in the amount of $190,404.89, plus interest and statutory additions, for unpaid income taxes for the years 1971, 1972, 1973, 1977, 1978, 1980, and 1982, against Mr. Brown, the sole wage earner. The district court also set aside as fraudulent Mr. Brown's conveyance of his interest in his business property, upheld the tax liens on the property, and ordered the property foreclosed and sold to satisfy the liens.[1] Defendants appeal. We exercise our jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 
 6
 The real property that is the subject of the foreclosure and sale order was used by Mr. Brown for his dentistry business.[2] In 1972, Mr. Brown conveyed his undivided one-half interest in the property to his wife, defendant Ila D. Brown, who owned the other undivided one-half interest, resulting in title to the property in Mrs. Brown's name. At about that time, Mr. Brown ceased paying federal income taxes. Mr. Brown continued to use the property for his business.
 
 
 7
 Defendants raise several arguments on appeal. In general, they maintain the government failed to establish a duty to pay taxes and failed to establish the district court's jurisdiction. They also claim (1) the action was not filed in compliance with 26 U.S.C. §§ 7401 and 7403 requiring authorization for the civil action by the Secretary of the Treasury and the Attorney General; (2) the district court erred in receiving and relying on various items of evidence; (3) the district court's findings of fact and law that the business property was fraudulently conveyed was incorrect; and (4) defendants were denied their right to a jury trial.
 
 I. TAX PROTESTER ARGUMENTS
 
 8
 Defendants make several arguments that the district court was without jurisdiction. We review de novo the question of the district court's jurisdiction. Kunkel v. Continental Casualty Co., 866 F.2d 1269, 1273 (10th Cir.1989).
 
 
 9
 In Lonsdale v. United States, 919 F.2d 1440 (10th Cir.1990), we addressed and rejected many tax protester arguments, several of which were raised by defendants in this case to challenge the district court's jurisdiction. In Lonsdale we rejected arguments raised here by petitioners, holding that
 
 
 10
 the following arguments ... are completely lacking in legal merit and patently frivolous:
 
 
 11
 * * *
 
 
 12
 (2) the authority of the United States is confined to the District of Columbia;
 
 
 13
 (3) ... [various] arguments against the government's power to impose income taxes on individuals;
 
 
 14
 * * *
 
 
 15
 (6) the income tax is voluntary;
 
 
 16
 (7) no statutory authority exists for imposing an income tax on individuals; [and]
 
 
 17
 *1430_
 
 
 18
 ............................................................
 
 
 19
 ....................
 
 
 20
 * * *
 
 
 21
 (9) individuals are not required to file tax returns fully reporting their income....
 
 
 22
 Id. at 1448. Also meritless is the argument that "the Commissioner of Internal Revenue and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue laws ... because of invalid or nonexistent delegations of authority." Id. Accordingly, defendant's similar arguments are rejected as meritless.
 
 
 23
 II. AFFIRMATIVE DEFENSE--26 U.S.C. §§ 7401 & 7403
 
 
 24
 Defendants raised the affirmative defense that the government failed to comply with 26 U.S.C. §§ 7401 and 7403(a), which require the authorization of the Secretary of the Treasury and the Attorney General before commencement of a civil action to collect taxes or enforce a tax lien. Defendants claim the civil action against them was filed without the requisite authorizations. Counsel for the government filed the following written statement:
 
 
 25
 3. By letter dated March 21, 1986 Chief Counsel, Internal Revenue Service by Marion K. Mortensen, District Counsel, a delegate of the Secretary of the Treasury, requested that an action be brought to reduce the federal tax assessments against L. Shyrl Brown to judgment, to set aside the fraudulent conveyance of two parcels of real property and to foreclose the federal tax liens against L. Shyrl Brown.
 
 
 26
 4. I was instructed by Stephen G. Fuerth, Chief, Civil Trial Section, Western Region, Tax Division, U.S. Department of Justice to bring the present action. Mr. Fuerth is a delegate of the Attorney General of the United States.
 
 
 27
 * * *
 
 
 28
 I declare under penalty of perjury that the foregoing is true and correct.
 
 
 29
 R.Vol. I, doc. 50 at 1-2.
 
 
 30
 The record reflects that defendants did not respond to the government's statement. They neither came forward with evidence to controvert the statement nor challenged the form or the content of the statement. In pleadings filed after the government's statement of compliance with §§ 7401 and 7403(a), defendants merely reiterated their claim that the government had not complied with those sections.
 
 
 31
 Once the government offered some evidence of compliance with §§ 7401 and 7403(a), defendants had the burden of going forward with evidence to establish their affirmative defense. See Simopoulos v. Virginia, 462 U.S. 506, 510 (1983) ("Placing upon the defendant the burden of going forward with evidence on an affirmative defense is normally permissible."); Patterson v. New York, 432 U.S. 197, 207-08 (1977) (requiring defendant to carry burden of persuasion on affirmative defense of extreme emotional disturbance does not violate due process clause). Defendants failed to meet their burden. Therefore, because the government's evidence of compliance with §§ 7401 and 7403(a) is uncontroverted, we determine defendants conceded that the government complied with those sections.
 
 III. EVIDENTIARY MATTERS
 
 32
 Defendants allege several evidentiary errors. First, they claim the government failed to produce sufficient admissible evidence to establish the taxes due from Mr. Brown.
 
 
 33
 In a suit brought by the government to collect taxes resulting from unreported income, the government generally establishes a prima facie case when it shows a timely assessment of the tax due, supported by a minimal evidentiary foundation, at which point a presumption of correctness arises. A presumption of correctness attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income. This presumption will permit judgment in the Commissioner's favor unless the opposing party produces substantial evidence overcoming it.
 
 
 34
 United States v. McMullin, 948 F.2d 1188, 1192 (10th Cir.1991) (citations omitted).
 
 
 35
 In this case, the government introduced into evidence the certificates of assessment. The government then elicited testimony from Mr. Brown that he had not filed a tax return showing his income since 1970, and that he had been the sole source of financial support of his family of eight during the tax years in question. Accordingly, the government's evidence met the McMullin test. Defendants produced no evidence to challenge the information reflected on the assessments. Therefore, judgment in the government's favor was warranted.
 
 
 36
 Defendants next contend the certificates of assessment were inadmissible hearsay evidence. They also contend the certificates were inadmissible because they are computerized summaries. Certificates of assessments fall within the public records exception to the rule against hearsay because they "qualify as '[r]ecords, reports, ... or data compilations, in any form, of public offices or agencies, setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report.' " Hughes v. United States, 953 F.2d 531, 539 (9th Cir.1992) (quoting Fed.R.Evid. 803(8)). Official IRS documents, including those generated by computer, are admissible as public records. Id. at 540; see also United States v. Hayes, 861 F.2d 1225, 1228 (10th Cir.1988) (noting the "well established proposition" that data generated by computer may qualify under business records exception of Rule 803(6)). Accordingly, we determine the certificates of assessment were properly admitted.
 
 
 37
 Defendants further complain that they were denied discovery of the documents underlying the assessments. "We review orders relating to discovery for an abuse of discretion." Johnson ex rel. Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir.1992), petition for cert. filed, 61 U.S.L.W. 3371 (U.S. Nov. 4, 1992) (No. 92-779). During trial, the government's attorney stated that the government had complied with all of defendants' discovery requests. R.Vol. III at 138-39. Defendants did not dispute the government's representation except to say they were really trying to discover information other than the supporting documents. Id. at 142-43.
 
 
 38
 Defendants also complain that no witness appeared to testify about the data underlying the assessments, yet they refused the district court's offer to make available two witnesses who executed the certificates of assessment. R.Vol. IV at 243-44. The district court found that defendants had adequate opportunity to ascertain the identity of any witness they wanted to call. Id. at 243. Defendants do not dispute the figures stated in the assessments, except to say that the government has not proven their accuracy to defendants' satisfaction. Therefore, we perceive no abuse of discretion relating to discovery of the information underlying the assessments.
 
 IV. FRAUDULENT CONVEYANCE
 
 39
 The district court found that Mr. Brown had conveyed the business property to his wife with the intent to defraud the United States. R.Vol. II, doc. 107 at 6. Based on that finding, the district court set aside the transfer pursuant to Utah Code Ann. § 25-1-7 (1953) (currently codified at § 25-6-5 (1989)), and ruled that Mr. Brown retained a one-half undivided interest in the business property to which the federal tax liens attached. R.Vol. II, doc. 107 at 7.
 
 
 40
 Defendants allege several errors relative to the district court's order setting aside the business property conveyance: (a) the correct statute of limitations was four years after the transfer, as provided by Utah Code Ann. § 25-6-10 (1989), not the six years provided by the federal statute for collection of tax after assessment, 26 U.S.C. § 6502;[3] (b) the government failed to prove it was a creditor; (c) the government failed to establish notice and demand were sent to defendants; (d) the Utah fraudulent conveyance statute, § 25-1-7 (1953), permitting a future creditor to move to set aside a fraudulent conveyance, is unconstitutionally vague; (e) the government's liens did not attach to the property; and (f) a prerequisite to a finding of fraudulent conveyance under Utah Code Ann. 25-1-4 (1953) (currently codified at section 25-6-6 (1989)), was a finding that Mr. Brown was insolvent at the time of the conveyance or that he became insolvent because of the conveyance.
 
 
 41
 We conduct a de novo review of the district court's determination of state law. Mares v. ConAgra Poultry Co., 971 F.2d 492, 495 (10th Cir.1992). We review de novo the construction of federal statutes. FDIC v. Canfield, 967 F.2d 443, 445 (10th Cir.), cert. dismissed, 113 S.Ct. 516 (1992).
 
 
 42
 The Utah four-year statute of limitations for fraudulent conveyances, section 25-6-10 (1989), conflicts with the federal law providing a six-year statute of limitations under 26 U.S.C. § 6502. The Supremacy Clause, U.S. Const. art. VI, cl. 2, accords priority to federal rights "whenever they come in conflict with state law." Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 613 (1979); accord Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107 (1989). "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. The same rule applies whether the United States brings its suit in its own court or in a state court." United States v. Summerlin, 310 U.S. 414, 416 (1940) (citations omitted).
 
 
 43
 The district court relied on section 25-1-7 (1953) and Dahnken, Inc. v. Wilmarth, 726 P.2d 420 (Utah 1986), in finding Mr. Brown had fraudulently conveyed his interest in the business property to his wife, and therefore that Mr. Brown retained a one-half undivided interest in the property, subject to the federal tax liens. The district court properly employed state law to ascertain defendants' interest in the property, then applied federal tax law to that interest. United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985) ("[S]tate law controls in determining the nature of the legal interest which the taxpayer had in the property[;] ... tax consequences thenceforth are dictated by federal law.").
 
 
 44
 Defendants argue on appeal that the Utah statute permitting a future creditor to request a conveyance to be set aside as fraudulent, section 25-1-7 (1953), is unconstitutionally vague. The question of the constitutionality of the statute is not listed in the pretrial order as a disputed issue. Our review of the record does not reveal that defendants raised this argument at the district court, and defendants fail to direct us to pertinent portions of the record. See Securities & Exch. Comm'n v. Thomas, 965 F.2d 825, 826-27 (10th Cir.1992) (in counseled case, court would not search the record for the requisite record support). Therefore, we decline to address the issue raised for the first time on appeal. See Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991).
 
 
 45
 We next address defendants' claims that the government failed to prove it was a creditor, and that the assessment procedure was deficient. Proof that the government was a creditor was received at trial in the form of the assessment notices for the tax years in question. See Long v. United States, 972 F.2d 1174, 1181 (10th Cir.1992) (citing cases) (certificate of assessment prima facie evidence of valid assessment). Moreover, "a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by [26 U.S.C.] § 6203 and Treas.Reg. 301.6203-1." Id.
 
 
 46
 The government became a creditor on the dates the tax returns were due. 26 U.S.C. § 6151(a) (taxpayer shall pay the tax at the time fixed for filing the return); Pan Am. Van Lines v. United States, 607 F.2d 1299, 1301 (9th Cir.1979) (holding tax was due on the date the tax return was due); United States v. Thomassen, 610 F.Supp. 386, 391-92 (D.Neb.1985) (same); see also Holywell Corp. v. Smith, 112 S.Ct. 1021, 1028 (1992) ("No tax liability becomes due under § 6151 until the time required for making ... returns."). Therefore, we reject defendants' claims that the government was not a creditor and the assessment procedure did not comply with statutory requirements.
 
 
 47
 Defendants also claim that the liens did not attach to the property, primarily because title was transferred to Mrs. Brown's name prior to the notices of assessments, and prior to trial. A federal tax lien arises upon assessment for unpaid taxes, and attaches to all property belonging to the delinquent taxpayer. 26 U.S.C. §§ 6321-6322. When the district court set aside the conveyance to Mrs. Brown, Mr. Brown's interest became subject to the liens.
 
 
 48
 Defendants next claim that because Mr. Brown was not insolvent prior to the conveyance of the business property to Mrs. Brown, and because the conveyance did not make him insolvent, Utah Code Ann. § 25-6-6 (1989) precludes a finding that the conveyance was fraudulent. The district court set aside the conveyance of the business property pursuant to Utah Code Ann. § 25-1-7 (1953), not section 25-1-4 (1953) (currently section 25-6-6 (1989)). "Utah's Fraudulent Conveyance Act, § 25-1-1, et seq., establishes several different grounds for setting aside a debtor's transfer of property as a fraudulent conveyance." Butler v. Wilkinson, 740 P.2d 1244, 1260 (Utah 1987) (emphasis added). Actual fraudulent intent is required to make a conveyance fraudulent under section 25-1-7, while a transfer by an insolvent debtor under section 25-1-4 requires no actual intent. Butler, 740 P.2d at 1261. The district court's finding that the conveyance was fraudulent under section 25-1-7 does not conflict with the separate provisions of section 25-1-4. Therefore, the district court's determination will not be set aside.
 
 V. JURY TRIAL
 
 49
 Finally, defendants maintain they were entitled to a jury trial. A defendant in a suit brought by the government for collection or recovery of taxes is entitled to a jury trial. United States v. Anderson, 584 F.2d 369, 373 (10th Cir.1978). Where the government seeks only to enforce its tax lien, an action sounding in equity, no right to a jury arises. United States v. Annis, 634 F.2d 1270, 1272 (10th Cir.1980). Where, as here, the government seeks a money judgment and foreclosure of tax liens, the taxpayer is entitled to a jury trial on the money judgment claim. McMullin, 948 F.2d at 1190.
 
 
 50
 Here, the government's evidence that Mr. Brown was indebted for unpaid taxes included the certificates of assessment and Mr. Brown's testimony that he alone had provided all of the financial support for his family during the tax years in question. Defendants presented no countervailing evidence. Under these circumstances, even if defendants had been granted a jury on the government's legal claims, the district court would have been required to direct a verdict on those claims in the government's favor. Therefore, any error in denying defendants a jury trial was harmless. Id. at 1192.
 
 
 51
 All pending motions are DENIED.
 
 
 52
 The judgment of the United States District Court for the District of Utah is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The district court granted the parties' requests to stay the sale of the property
 
 
 [2]
 The government also claimed that the defendants' residential real property, held from the date of purchase in Mrs. Brown's name, was subject to foreclosure and sale for Mr. Brown's tax liability, but the district court declined to find a fraudulent conveyance of the residential property. The government filed a notice of appeal, but subsequently voluntarily dismissed its appeal
 
 
 [3]
 The statute was subsequently amended to provide for a ten-year statute of limitations. 26 U.S.C. § 6502(a) (1990)