**In re A. David SILVER, Debtor.**

**and**

**In re Jerilyn Silver, Debtor.**

**Yvette J. Gonzales, et al., Plaintiffs,**

**United States of America (Internal Revenue Service), Defendant.**

**No. 7–96–11879 SS.**

United States Bankruptcy Court,
D. New Mexico.

April 7, 2003.

---

**39.** *See Wolfe,* 78 F.3d at 115–116; *Beezley,* 994 F.2d at 1434; *Madaj,* 149 F.3d at 472.

James C. Jacobsen, Albuquerque, NM, for debtors.

Clifford C. Gramer, Jr., Albuquerque, NM, for trustee.

Leonard K. Martinez–Metzgar, Albuquerque, NM, United States Trustee.

### Memorandum Opinion in Support of Judgment

JAMES S. STARZYNSKI, Bankruptcy Judge.

This matter came before the Court for an evidentiary hearing on the merits of the complaint (doc 1) and the interlineated amended complaint (doc 12) and the answer (doc 7), and on the briefs and the "Time Line" (doc 36), the chronology of events deemed relevant by the parties. Plaintiff Gonzales ("Trustee") is represented by Clifford C. Gramer, Jr., Lincoln National Life Insurance Company ("Lincoln") and Plaintiffs as a group ("Plaintiffs") by Rodey, Dickason, Sloan, Akin & Robb, P.A. (William J. Arland, III), and defendant United States of America ("IRS" or "Defendant") by Assistant United States Attorney Jon E. Fisher. This memorandum constitutes findings of fact

and conclusions of law pursuant to F.R.B.P. 7052.

**Jurisdiction:**

The Court has jurisdiction of the subject matter and the parties hereto pursuant to 28 U.S.C. §§ 1334 and 157. Defendant denied that this is a core proceeding pursuant to 28 U.S.C. § 157(b). United States of America's Answer, paragraph 3 at page 4 (doc 7). The Court finds that the relief requested in the complaint is primarily an adjudication of the liens claimed on estate property by Defendant and an adjudication of whether certain property is property of the estate. In consequence, the Court finds that it may hear and determine the matters herein pursuant to 28 U.S.C. § 157(b)(2)(B), (K) and perhaps (E) and (O)((E) and (O) in the sense that Plaintiffs seek a determination that certain property is property of the estate).

**Facts:**

The Court has relied on the Time Line and the evidence presented at the merits hearing. The evidence consisted of exhibits submitted by each side, and testimony. Although the Trustee's exhibit book was missing some exhibits at the time of trial, the parties in effect have stipulated to many of the facts so that the Court has been able to make findings of fact sufficient to decide this adversary proceeding. A brief summary of as much of those facts as is needed to decide this adversary is as follows:

1. The IRS obtained a lien against all the Silvers' personal property by filing liens over a period of several years prior to the Silvers filing their chapter 7 petitions. The liened property included the furniture, household furnishings, antiques, paintings, or other art which are and have been the subject of dispute between the parties ("Art"). (The Art has since been sold. *See* Memorandum Opinion and Order Granting Trustee's Motion for Approval of Payment of Expenses of Sale of Property of the Estate (docs 98 and 99 respectively) in the underlying cases, *In re Silver*, No. 7–96–11879 ("Sale Expenses Order").)

2. The IRS lien was junior to the lien of Los Alamos National Bank on the Art.

3. The Bank foreclosed on the Art in a state court action (SF 94–904(C)), in which the IRS was a party (a fact which apparently no one disputes), thus cutting off the junior IRS liens.

4. ADS Financial Services, an entity owned and controlled by either or both of the Silvers ("ADS"), purchased the Art from the Bank in August 1995.

5. The Silvers filed chapter 7 bankruptcy petitions on May 2, 1996.

6. In January 1998, more than a year and half after the Silvers filed their bankruptcy petitions, the IRS filed liens against the various children's trusts and other Silver entities (specifically, the Silver Children's Trust, Platinum Group, Caleb Borden Silver Trust, Claude Amanda Silver Trust, and the Dayn Schulman Trust), in their capacity as transferees, alter egos and/or nominees of the Silvers. Time Line, at 7 (doc 36). The newly liened parties did not include ADS. Indeed, it appears that the IRS has never filed a lien against ADS. *Id.*

7. In May 1998 the Trustee filed her complaint seeking to avoid transfers to ADS and other entities (specifically, ADSFIN, Platinum Group, Santa Fe Capital, Santa Fe Capital of New Mexico, and Competere Group) pursuant §§ 548–550 and the state

fraudulent transfer statute, N.M.S.A.1978 §§ 56–10–14 et Seq (1996 Repl.). The Trustee obtained a judgment on her complaint in September 1998 (complaint, Exhibit A); the judgment included a finding that ADS and other entities were alter egos of the Silvers.

8. The finding in the judgment was that the transfers were "fraudulent, voidable and recoverable under 11 U.S.C. §§ 548–550" and "fraudulent and voidable" under the New Mexico fraudulent transfer statute.

9. The IRS has not argued that this judgment was not binding on everyone who is a creditor of the estates; in fact, the IRS "thanked" the Trustee for pursuing this action and, more important, its argument essentially admits that the property was recovered for the Silver estates (albeit the IRS asserts its lien encumbers the recovered property).

10. The IRS never had physical possession of any of the stock certificates at issue, nor did the books or records of the issuing companies ever list the IRS as the owner of the stock or as having a lien on the stock.

**Legal analysis concerning the Art:**

1. In summary, the IRS lien was foreclosed out by the Bank's foreclosure action, the Art then went to ADS free of the IRS lien, the bankruptcy intervened which allowed the Trustee to exercise her bankruptcy avoiding powers (which avoiding powers include (a) the direct bankruptcy avoiding power of § 548 and (b) by incorporation, the state avoiding power of §§ 56–10–14 et seq.), the exercise of that power brought the Art back into the estate, the IRS lien did not attach because the Art was now property of the estate and the lien could not attach post petition. *See* Sale Expenses Order. *U.S. v. Gold (In re Avis)*, 178 F.3d 718, 723–24 (4th Cir.1999).

2. The IRS never filed a lien against ADS, either as its own entity or as an alter ego of the Silvers, at any time before the Trustee brought the Art into the estates.

3. The IRS argues that *Avis* is not applicable because that case dealt with an inheritance and not a fraudulent transfer. However, both *Avis* and this adversary proceeding deal with property brought into the estate after the filing of the petition, and therefore the distinction does not make a difference in the analysis.

4. The cases cited by the IRS are inapposite because they do not match the factual/legal pattern of this case.

5. For example, in *In re Amtron*, 192 B.R. 130 (Bankr.D.S.C.1995), the emphasis was on the direct transfer from the debtor to the transferee of the patent rights in question (rather than, as here, a transfer of the assets following a foreclosure), and even more so on the specific language of the South Carolina statute which provided that fraudulent transfer under state law were absolutely void (that is, from the outset of the original transaction). 192 B.R. at 132. Note especially the language in note 2 of the opinion, citing the statute, and the court's reliance on a "plain reading" of the South Carolina statute. Those two factors do not exist in this case.

6. For another example, *Claussen Concrete v. Walker (In re Lively)*, 74

B.R. 238 (S.D.Ga.1987), *aff'd wo op.* 851 F.2d 363 (11th Cir.1988), the creditor had a valid judgment lien which followed the property into the hands of the fraudulent transferee, which transfer the trustee undid. In that case no foreclosure case had intervened to cut off the property from the lien, as happened here. The IRS would in essence have the Court ignore the fact or the effect of the Bank's foreclosure action, which the Court will not do.

7. The IRS would also have the Court treat the Trustee's avoidance judgment as in essence having retroactive effect such that as soon as ADS obtained the property from the Bank (before the Silvers filed their bankruptcy petitions and before the Trustee obtained her judgment), the Art was treated as being property of the Silvers and therefore subject to the IRS lien.

8. The IRS argument raises two considerations:

a. What of a case (unlike this one) in which the property, subject to a lien, is transferred fraudulently and then a bankruptcy petition is promptly filed: should the secured creditor lose its collateral by such a gambit? The Court does not think so, and there would seem to be nothing wrong with the notion in those circumstances that the creditor's lien follows the property. N. Sanborn, Avoidance Recoveries in Bankruptcy: For the Benefit of the Estate or the Secured Creditor?, 90 Columbia L.R. 1376, 1398–1400 (1990) ("If a creditor can establish a valid, perfected security interest in an asset that had been transferred by the debtor, a comparable entitlement to the recovered property should be respected, but only if such security interest continued to be enforceable against the transferee under non-bankruptcy law. The provisions of sections 550 and 551, requiring that property is recovered or liens are preserved 'for the benefit of the estate', together [with] the section 541 definition of 'property of the estate', should be interpreted simply as ensuring that these property interests are recovered or preserved but subject to liens."). But in this case, the IRS did not have a valid *continuing* perfected security interest in the Art, because that was cut off by the foreclosure sale to the Bank. And that is the difference between this case and cases such as *Lively, United States v. Neilson,* 986 F.2d 1430, 1992 WL 401598 (10th Cir.1992) (unpublished) (cited by the IRS); *In re Figearo,* 79 B.R. 914 (Bankr.D.Nev. 1987), *Official Unsecured Creditors Committee v. Northern Trust Company (In re Ellingsen MacLean Oil Co., Inc.),* 98 B.R. 284, 289–291 (Bankr.W.D.Mich.1989), and *In re Amtron, Inc.,* 192 B.R. 130 (Bankr. D.S.C.1995). *Compare Research–Planning, Inc. v. Segal (In re First Capital Corporation),* 917 F.2d 424 (10th Cir.1990) (en banc) (no constructive trust on funds which were transferred to a good faith transferee prepetition and then recovered by the trustee).

b. Unlike the Georgia statute, the New Mexico statute makes a transfer only voidable, not void, and therefore not void ab initio. The IRS concedes that the fraudulent conveyances at issue must be analyzed under New Mexico law, and that New Mexico law says that fraudulent conveyances are *voidable.* IRS trial brief at 6. *See Del-*

*gado v. Delgado,* 42 N.M. 582, 586, 82 P.2d 909 (1938) ("It is not invariable that an act done in violation of a statutory prohibition is absolutely void.") See also N.M.S.A. § 56–10–22(A), (B), (D), (E) and (F) (all using the term "voidable" or a variant thereof, rather than "void" or a variant thereof).

c. And the IRS does not successfully refute or distinguish the argument of the Trustee and Lincoln that the IRS lien does not attach to property that the debtor does not own. 26 U.S.C. § 6321 (lien attaches to all property "belonging" to the debtor). "[T]he taxpayer must have a beneficial interest in any property subject to the lien." *Drye v. United States,* 528 U.S. 49, 59 n. 6, 120 S.Ct. 474, 482, 145 L.Ed.2d 466 (1999) (Internal quotation marks and citations omitted.) See also N.M.S.A. § 56–10–20(D) (". . . a [fraudulent] transfer is not made until the debtor has acquired rights in the asset transferred . . . .").

d. That is, following the cutoff of the IRS lien by the foreclosure, the Art did not go back to the debtors before it went to ADS. At least so far as the record discloses, *see* Time Line (doc 36), the IRS lien never attached to the property of ADS.

7. The IRS asserted claims and liens against the Silver's children's trusts and related entities, not because it had a direct claim against those entities but because it sought to pursue into their hands property that belonged to the Silvers. More accurately stated, in light of the Silvers' filing of their petitions in 1996, the property being pursued was actually part of the Silvers' chapter 7 estates. Any claims, including claims supporting the liens, therefore belonged to the Trustee.

8. In general, recoveries by the trustee are for the estate and all its creditors generally, not for one or more specific creditors. *Delgado Oil Co. v. Torres,* 785 F.2d 857, 861 (10th Cir.1986). And this sort of recovery—a fraudulent transfer action under either § 544 (permitting trustee to recover under state fraudulent transfer statute) or § 549 (bankruptcy fraudulent transfer statute), which were preserved for the benefit of the estate pursuant to § 550—belongs to the estate pursuant to § 541(a)(3) (or perhaps § 541(a)(7)) and can only be brought by the trustee, even if under state law the creditor could have brought a state fraudulent conveyance action before the bankruptcy petition was filed. *See Delgado Oil,* at 860–61 (§ 547 preferential transfer recovery).

**Legal analysis concerning the stock:**

9. The IRS argues that the liens which it had filed and recorded attached to and encumbered the stock. However, those liens were not valid "as against a holder of a security interest in [the stock] who, at the time such interest came into existence [on the date of the petition], did not have actual notice or knowledge of the existence of such lien." 26 USC § 6323(b)(1)(B). The "notice or knowledge" with which the Bankruptcy Code charges the Trustee is not her knowledge in her individual capacity (that is, what did Yvette Gonzales personally know), but rather what any person in the public is charged with knowing, constructively or otherwise, such as by a filing in the records of the Secretary of State or the county real estate records, ad-

verse possession, physical possession [for cash or other securities], etc. *E.g., Crowder v. Crowder (In re Crowder)*, 225 B.R. 794 (Bankr. D.N.M.1998). The IRS, to be "perfected" in the stock as against a "good faith purchaser or lien holder", needed to have seized the stock and to have had "physical possession" of it—that is, to have possession of the stock certificate or perhaps be recorded in the books of the company as the holder of the stock. This the IRS had not done as of the date of the petitions, and when the stock was brought into the Silver estates, the IRS lien could not encumber the stock.

10. The IRS argues that in affirming the trial court's decision in *Straight v. First Interstate Bank of Commerce (In re Straight)*, 200 B.R. 923, 929–930 (Bankr.D.Wyo.1996), the Tenth Circuit Bankruptcy Appellate Panel held that the Bankruptcy Court concluded that the Debtors were precluded from using § 545(2) from avoiding the IRS tax lien on "securities" because the status of a § 545(2) bona fide purchaser does not qualify sufficiently as a purchaser for full and adequate consideration under § 6323(b). *Straight v. First Interstate Bank of Commerce (In re Straight)*, 207 B.R. 217 (10th Cir. BAP 1997). It is true that the trial court held that the bona fide purchaser status conferred on the Trustee by § 545(2) did not rise to the level of the bona fide purchaser who would give full and adequate consideration to qualify for the exception to the tax lien as provided by § 6323(b), and that the B.A.P. in its decision stated that the trial court had decided the issue on that basis. But the B.A.P.

specifically ruled that it did not need to address the bona fide purchaser issue at all because the Debtors (in that case) did not have the authority under § 522(c)(2)(B) to exercise the Trustee's avoiding powers. In short, the B.A.P. affirmed the result reached by the trial court, not the reasoning. The IRS argument, to the extent it intends to leave the impression that the B.A.P. affirmed the Bankruptcy Court's reasoning, is simply wrong.

**"Other" issues:**

11. The Trustee has the obligation to recover assets for the estate to pay claims against the estate, including priority claims such as those of the IRS. The issues of what charges the Court will allow to the Trustee and Lincoln that may reduce the amount of the distribution on priority claims, and what will be the amount of the priority claims, and related issues of distribution, are not the subject of this adversary proceeding but should be decided in the underlying chapter 7 cases.

12. In its answer, Defendant raised four affirmative defenses. The first two were that the complaint named the IRS rather than the United States as the defendant, and that Plaintiffs did not serve the complaint on Defendant's counsel. Those defenses are mooted respectively by the amending of the complaint by interlineation and by IRS counsel helpfully agreeing that Plaintiffs could effect service by serving counsel.

13. The other two affirmative defenses were respectively laches and that even if Plaintiffs were successful,

the recovery would be devoted to paying the IRS claim anyway. United States of America's Answer, at 2–3 (doc 7). The claim of laches is based on the fact that the bankruptcy cases were filed in 1996, that the IRS filed its proofs of claim within about a year of the filings, and this action was brought about 3½ years after the petitions were filed. The Court takes judicial notice of the long and tortuous history of the underlying chapter 7 cases and the related adversary proceedings as disclosed in the files of those cases and adversary proceedings, which included the actions to pursue alter ego claims for the estate and to revoke the debtors' discharges. The long and tenacious struggle of the Trustee to search out, untangle and recover assets in the course of administering the estates, and the facts that this adversary proceeding was filed less than four years after the filing of the petition and that the IRS has shown no prejudice, show that the Trustee has been sufficiently diligent in pursuing this relief. Similarly, the fourth affirmative defense, to the effect that the IRS will be paid anyway, does not constitute a basis for dismissing the action, especially when that relief was not sought earlier by the IRS. What attorney fees will be awarded to Plaintiffs from the estate will be resolved in the main cases.

**Conclusion:**

Plaintiffs have asked for several forms of relief. First, they ask that any IRS liens on any and all of the property described in paragraphs 23–25 of the complaint be declared invalid. The property described in paragraphs 23–25 is the "Art" as defined in this memorandum. Those IRS liens were cut off by the Bank foreclosure action and could not reattach because the Art never came back into the ownership of the Silvers before the Silvers filed their petitions. Therefore the Court can and will rule that the IRS liens do not attach to or otherwise encumber the Art.

■ Plaintiffs ask that any IRS liens filed against the property of the Silvers' bankruptcy estates after May 2, 1996 (the petition date) be declared void for being in violation of the automatic stay. Included specifically in this request is the property recovered in the fraudulent transfer (alter ego) action (98–1092). The Court can and will so rule.

Plaintiffs ask that any IRS liens against any stock belonging to the estate be declared invalid. The Court can and will so rule with respect to the Xing Technology/RealNetworks stock that was specifically addressed by the parties. However, the Court cannot similarly rule concerning any other stock of the estate in which the IRS claims a lien, should there be any, without knowing whether the facts surrounding such stock match the facts of the RealNetworks stock. Therefore the ruling will be limited to the RealNetworks stock.

■ Plaintiffs ask for a declaration that "any and all alter ego claims seeking to have any entity or person declared to be the alter ego of David or Jerilyn Silver are property of their respective Chapter 7 estates." The Court can and will so rule.

Plaintiffs ask for an order invalidating the "IRS alter ego tax liens" on the Silver Children's Trust, Platinum Group, Caleb Borden Silver Trust, Claude Amanda Silver Trust, and the Dayn Schulman Trust, and ADS as being in violation of the automatic stay. Although the Court is not aware of any IRS alter ego claims against ADS, the Court can and will so rule.

Plaintiffs ask for costs and reasonable attorney fees from the IRS. No legal basis has been shown for the award of attorney fees, and so that request for relief will be denied. Costs will be allowed when and if there is compliance with the applicable rules.

Plaintiffs ask for such other and further relief as the court deems just and proper. No other relief is granted to Plaintiffs.

Defendant's affirmative defenses will be denied, the first two as moot and the second two (laches and the defense that the IRS will be paid anyway) on the merits.

A judgment is will enter with the entry of this memorandum opinion.[1]

---

1. The Court's staff attorney has not participated in any aspect of the trial and decision of this adversary proceeding.